PARZYNSKI, Appellee and Cross–Appellant,

v.

PARZYNSKI, Appellant and Cross–Appellee;

Prescott, Ball & Turben et al., Appellees.

[Cite as *Parzynski v. Parzynski* (1992), 85 Ohio App.3d 423.]

Court of Appeals of Ohio,
Erie County.

No. E–91–30.

Decided Dec. 30, 1992.

424

*Marshall J. Wolf,* for appellee and cross-appellant.

*John Sutula,* for appellant and cross-appellee.

ABOOD, Judge.

This is an appeal from a judgment of the Erie County Court of Common Pleas, Domestic Relations Division, which granted the motion of appellee and cross-appellant Dorothy S. Parzynski to modify child support. Appellant and cross-appellee Frank A. Parzynski has appealed, setting forth the following assignments of error:

"Assignment of Error I

"The trial court erred in increasing appellant's child support obligation when appellee had contracted to provide all additional child support, and circumstances had not changed so as to render her performance impossible.

"Assignment of Error II

"The trial court erroneously calculated gross income for the purposes of determining child support when it excluded spousal support received by appellee.

"A. Ohio Rev.Code Sec. 3113.215 defines gross income to include spousal support received by a party in that party's income.

"B. Ohio Rev.Code Sec. 3113.215 defines gross income to exclude spousal support paid by a party from that party's gross income.

"C. The trial court has placed an inequitable interpretation on Sec. 3113.215 that bears no relation to the result intended by the General Assembly.

"D. The trial court's interpretation of Ohio Rev.Code Sec. 3113.215 violates the Equal Protection Clauses of the U.S. and Ohio Constitutions.

"E. The trial court erred in failing to exclude from appellant's income the pension contribution made on his behalf by Lake Wilmer OB/GYN, Inc.

"Assignment of Error III

"The trial court erred in determining that appellant's spousal support obligation after June 1, 1990 was $28,460.00 instead of $35,480.00 as indicated by the separation agreement.

"Assignment of Error IV

"The trial court abused its discretion, ruled against the manifest weight of the evidence, and committed errors of law in increasing child support to the sum of $29,328.00 per year.

"A. The trial court abused its discretion in considering the Comdisco investment 'income.'

"B. The trial court abused its discretion in adding back the pension contribution to appellant.

"C. The trial court failed to consider the expenses on a case by case basis pursuant to Ohio Rev.Code Sec. 3113.215.

"D. The trial court abused its discretion in failing to consider appellee's large unearned 'potential income' under Ohio Sec. 3113.215(A)(5).

"Assignment of Error V

"The trial court erred in ordering the modification support to be imposed retroactive to August 3, 1989, the date of the filing of the motion to modify.

"Assignment of Error VI

"The trial court erred in failing to give credit for an in kind contribution pursuant to Ohio Revised Code Section 3113.215(B)(3)(i) in determining the amount of support retroactive to the date of filing of the motion to modify.

"Assignment of Error VII

"The trial court erred in applying Ohio Revised Code Sec. 3113.215 retroactively prior to the effective date of the statute.

"Assignment of Error VIII

"The trial court erred in failing to deviate from the computed amount of support under Ohio Revised Code Sec. 3113.215(B)(2)(b).

"Assignment of Error IX

"The trial court erred in awarding appellant to pay to appellee the sum of $12,500.00 as and for attorney fees which is not based on appellee's need and/or ability to pay her own fees and expenses."

Appellee and cross-appellant Dorothy S. Parzynski has set forth one cross-assignment of error:

"The trial court erred as a matter of law to the prejudice of appellee/cross-appellant in deducting the spousal support paid by appellant to appellee when determining appellant's gross income for purposes of calculating child support pursuant to Revised Code § 3113.215."

The facts that are relevant to the issues raised on appeal are as follows. On December 15, 1987, the parties were granted a divorce. The final judgment entry, which incorporated the separation agreement of the parties, provided, among other things, that appellee was granted sole custody of the two minor children of the marriage, Margaret Mary, born October 19, 1971 and Frances Ann, born January 17, 1975, with appellant to have reasonable and liberal visitation rights. As to child support, the order provided that:

"Commencing April 21, 1986, the [appellant] shall pay directly to [appellee], and not administered by the Bureau of Support, the sum of One Hundred Thirty-Five Dollars ($135.00) per week, per child, a total of Fourteen Thousand Forty Dollars ($14,040.00) per year for both children in biweekly installments, and shall terminate upon the respective child graduating from high school and reaching the age of eighteen (18), or otherwise becoming emancipated, whichever is first to occur. This level of support is contemplated to cover all costs and expenses for the minor children, through emancipation of each. Only in the event of extraordinary circumstances, dramatically affecting the children, may a modification be ordered, but normal and reasonable expectations or circumstances shall not constitute a reason for modification of this order. Otherwise, the wife shall assume any support of the children in excess of the husband's contribution toward support."

As to alimony, the agreement provided that appellant was to pay to appellee the sum of $28,460 per year in biweekly installments for seven years beginning May 1, 1986 and ending April 30, 1993. Upon the emancipation of the oldest child, appellee's alimony would increase by $7,020 annually, the amount of child support payments for that child, for the remainder of the term of the alimony.

On August 3, 1989, appellee filed a motion for modification of child support and for attorney fees. She claimed in her motion that the child support order was insufficient and that extraordinary circumstances dramatically affecting the children had occurred since that order, which included a substantial increase in appellant's ability to provide support and a substantial decrease in her ability to contribute to their support. After first dismissing and then reinstating appellee's motion, the trial court ultimately held hearings on it on May 29, June 6, November 7, and December 27 and 28, 1990.

At the hearings appellant testified as to his gross income for 1988 and 1989, which included wages, bonuses, interest, rental and investment income. Appellant also testified as to the businesses in which he was part owner, his annual contributions to his pension fund, his business and personal monthly expenses, and expenditures he had made on behalf of his children, including $27,000 in 1989 for one daughter's horse and $12,000 in 1990 for one daughter's college expenses.

Appellee testified as to her gross income for 1988 and 1989, which consisted of alimony, child support, a substantial withdrawal from her IRA, and a minimal amount from interest on rental properties. Appellee also testified as to her monthly expenses as well as her physical disabilities, which include the limited use of her left hand, neurological damage, and incomplete extension of her right arm. These disabilities were the result of a car accident for which she had a yearlong convalescence and for which she had been charged with involuntary manslaughter and had incurred approximately $27,000 in attorney fees. Appellee stated that she did not work outside the home but was a student at Bowling Green State University. She also testified as to a business interest that she has in a failed limited partnership with one John Windich and a resulting debt of $55,000, one half of which was supposed to be Windich's responsibility.

Windich testified that he was a real estate broker and that, although appellee had been an agent with his company since 1989, she had been in the office a limited number of times and never earned any money through his agency.

The trial court filed its decision on appellee's motion on April 2, 1991, and its judgment entry on May 10, 1991. In granting the motion and awarding an increase in child support to appellee, the trial court found that appellee's gross income for 1989, including wages, interest, rental and depreciation but not including alimony, child support or IRA withdrawals, was $5,188; that appellant's gross income for 1989 not including his alimony payments to appellee of $28,460 but including $30,000 in pension plan contributions was $288,585; that in calculating appellant's child support obligation it was bound by R.C. 3113.215, effective April 12, 1990, and that pursuant to 3113.215(B)(2)(b), since the combined income of the parties was greater than $120,000 it must calculate the child support obligation based upon the same percentage of gross income that would have been computed under the basic child support schedule for a combined gross income of $120,000; that there was no reason under the facts and circumstances of the case to deviate from the guidelines; that the expenditures made by appellant for his daughter's horse were voluntary and not child support; that pursuant to the guidelines appellant should have been paying child support for both children from August 3, 1989 through May 31, 1990 in the amount of $885.85 per week for a total of $38,977.40 instead of the $11,880 that he paid; and that since June 1, 1990, appellant should have been paying $564.95 a week for the remaining minor

child for a total of $24,857.80 (through March 1991) instead of the $5,950 that he paid. The trial court then calculated the total arrearages due appellee from appellant to be $46,015.20 and awarded appellee judgment in that amount. The trial court also ordered appellant to pay child support in the amount of $564.95 per week beginning April 4, 1991, through the Erie County Child Support Enforcement Agency.

As to appellee's request for attorney fees, the trial court found that, since there was no evidence before it as to the hourly rate of divorce attorneys in Erie County, it could not accept the amount of $24,000 requested by appellee and instead awarded her $12,000.

On May 24, 1991, appellant filed a motion for new trial in which he argued that the trial court had erred in calculating the gross income of the parties by failing to consider evidence of appellant being underemployed and not imputing the appropriate amount of income to her, and by failing to consider his additional expenditures on behalf of his daughters as "in-kind contributions." On June 2, 1991, the trial court denied appellant's motion for a new trial. Appellant filed his notice of appeal on June 10, 1991, and appellee filed her notice of appeal on June 19, 1991.

■ We will consider appellant's seventh assignment of error first. In this assignment of error, appellant asserts that the trial court erred in applying R.C. 3113.215 to a period of time prior to April 12, 1990, the effective date of the statute.

Upon review of the record, however, we find that, although appellee's motion to modify child support was filed on August 3 and reinstated on November 19, 1989, the hearings on the motion and the filing of the trial court's decision and judgment entry took place after the effective date of R.C. 3113.215 and, therefore, the trial court properly applied that section in making its decision. See R.C. 3105.21.[1]

Accordingly, appellant's seventh assignment of error is found not well taken.

■ In her first assignment of error, appellant asserts that the trial court erred by increasing his child support payments when appellee had contracted to provide all child support over and above the amount paid by him and that circumstances had not changed so as to render her performance impossible. In support of this assignment of error appellant argues that, although ordinarily a

---

1. R.C. 3105.21 provides in pertinent part:
    "(C) * * * Any court of common pleas that makes or modifies an order for child support under this section on or after the effective date of this amendment shall comply with sections 3113.21 to 3113.218 of the Revised Code."

child support order may be modified by the court at its own discretion if there is a showing of a substantial change in circumstances, even a substantial change in circumstances will not justify modification of a child support order which embodied the express agreement of a custodial parent to assume sole responsibility for future support. Appellant submits that in such cases the court may only modify the original child support order if the circumstances of the support obligor have changed to the extent that that parent no longer has the ability to provide all of the support as originally agreed, citing *Bahgat v. Bahgat* (1982), 8 Ohio App.3d 291, 8 OBR 386, 456 N.E.2d 1239, and this court's decision in *Brown v. Brown* (May 10, 1991), Erie App. No. 90–CA–17, unreported, 1991 WL 77344.

Appellee responds that the trial court did not abuse its discretion in modifying appellant's child support obligation, since the agreement of the parties permits such a modification and the evidence she presented as to her physical and economic circumstances as well as an extraordinary increase in appellant's income was sufficient to justify the increase.

As set forth above, the separation agreement itself provided for a modification of child support "in the event of extraordinary circumstances, dramatically affecting the children." Upon consideration thereof, we find that appellant's assertion, that his child support obligation may only be modified upon a showing that appellee is no longer able to provide support over and above his obligation, is without merit. As to the cases relied upon by appellant, we find that they are not applicable to the facts of this case since both involved situations in which a custodial parent had agreed to assume the *sole* responsibility of child support with no express provision for modification.

As we have already determined in ruling on appellant's seventh assignment of error, the amended provisions of R.C. Title 31, pursuant to H.B. No. 591, were in effect at the time of the hearing and the trial court's decision on appellee's motion for modification. Therefore, the trial court was required to comply with R.C. 3113.21 through 3113.215 in considering appellee's motion for modification.

R.C. 3113.215(B)(4) (effective April 12, 1990) provides in pertinent part:

*"If an obligor or obligee under a child support [order] requests the court to modify the amount of support to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the support order in accordance with the schedule and pursuant to the applicable worksheet, through line 18, and if that amount as recalculated is more than ten percent greater than or more than ten percent less than the amount of child support that is required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet, through line 18, shall be considered by the court as a change of circumstance that is substantial enough to*

*require a modification of the amount of the child support order.* In determining pursuant to this division the recalculated amount of support that would be required to be paid under the support order for purposes of determining whether that recalculated amount is more than ten percent greater than or more than ten percent less than the amount of child support that is required to be paid pursuant to the existing child support order, the court shall consider, in addition to all other factors required by law to be considered, the cost of health insurance which the obligor, the obligee, or both the obligor and the obligee have been ordered to obtain for the children as specified in the order. Additionally, if an obligor or obligee under a child support order requests the court to modify the amount of support to be paid pursuant to the child support order and if the court determines that the amount of support does not adequately meet the medical needs of the child, the inadequate coverage shall be considered by the court as a change of circumstance that is essentially enough to require a modification of the amount of the child support order." (Emphasis added.)

■ As set forth above, appellant had been paying approximately $14,040 in child support annually for both of the minor children. In its decision, however, the trial court determined that the combined annual gross income of the parties in 1989 was $293,773. When calculating the child support order for purposes of R.C. 3113.215(B)(4), when the combined gross income of the parents is $293,773, the basic combined child support obligation for two children is approximately $45,500 per year.[2] Clearly, this is substantially greater than a ten-percent deviation from the current support order of $14,040 annually and, therefore, we find that the trial court did not abuse its discretion in finding a change of circumstances that required an upward modification of appellant's child support obligation. Accordingly, appellant's first assignment of error is found not well taken.

■ We will next consider appellant's second and appellee's cross-assignment of error together, since both challenge the trial court's treatment of spousal support payments in its determination of the parties' gross income for the purpose of calculating appellant's increased child support obligation.

---

2.  In our calculation we use the trial court's figures for the gross annual incomes of the parties without yet making any determination as to their accuracy. We also have made none of the adjustments provided for in the worksheet mandated by R.C. 3113.215(E), since we were unable to locate the necessary information in the record. Given the disparity in the amount of the child support obligation so calculated and the amount originally ordered, we feel that there is a large margin for error in determining the percentage of deviation and, therefore, even if we later determine that the trial court's gross income calculations are incorrect, there would still be a greater than ten percent deviation.

In his second assignment of error, appellant asserts that under R.C. 3113.-215(A)(1), spousal support received by a party is to be included in that party's gross income and spousal support paid by a party is to be excluded from that party's gross income. Appellant submits that the trial court erred by not including the spousal support that he paid to appellee in its calculation of appellee's gross income: $28,460 annually until their oldest child became emancipated on June 1, and thereafter $35,480 annually.

In support of this assertion appellant argues that R.C. 3113.215(A)(2) requires the trial court to include *all sources of income of a party, earned or unearned, whether taxable or not* when calculating a party's gross income for the purposes of determining a child support obligation. Appellant argues that the General Assembly, by expressly including in gross income "spousal support actually received from a person not a party to the support proceeding for which actual gross income is being determined * * *", *id.*, did not thereby impliedly exclude spousal support received from a party. Appellant points out that, while R.C. 3113.215(A)(2) sets forth a list of specific exclusions from the gross income calculation, that list does not include spousal support payments from the current spouse or parent of the children for whom support is sought. Appellant argues further that the statute does, by implication, exclude spousal support paid from the gross income of the payor, since it is clear that the purpose of R.C. 3113.215(A)(2) is to create a definition of "gross income" that conforms to the parties' actual cash flow position.

Appellant also argues that, by excluding spousal support received from appellant in its calculation of appellee's gross income, the trial court inequitably interpreted R.C. 3113.215 and that such an interpretation violates the Equal Protection Clauses of the United States and Ohio Constitutions. Appellant requests that this court reverse the finding of the trial court as to the parties' gross income calculations and direct the trial court to recalculate appellee's gross income to include the annual spousal support payments that he paid to her.

Appellee asserts the opposite in her cross-assignment of error. She argues that the trial court erred in excluding spousal support that appellant paid to her in its determination of appellant's gross income for the purposes of calculating his child support obligation. Appellee argues that the trial court's treatment of spousal support paid and received was mutually inconsistent and that such a deduction from appellant's gross income is contrary to the philosophy of "the intact family" created by the income shares model of the Ohio Child Support Guidelines.

R.C. 3113.215(A) provides in pertinent part:

"As used in this section:

"(1) 'Income' means either of the following:

"(a) For a parent who is employed to full capacity, the gross income of the parent;

"(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent, and any potential income of the parent.

"(2) 'Gross income' means, except as excluded in this division, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to, income from salaries, wages, overtime pay and bonuses to the extent described in division (B)(5)(d) of this section, commissions, royalties, tips, rents, dividends, severance pay, pensions, interest, trust income, annuities, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, spousal support actually received from a person not a party to the support proceeding for which actual gross income is being determined, and all other sources of income; self-generated income; and potential cash flow from any source.

" 'Gross income' does not include any benefits received from means-tested public assistance programs, including, but not limited to, aid to families with dependent children, supplemental security income, food stamps, or general relief, does not include any benefits received for any service-connected disability under a program or law administered by the United States Department of Veterans' Affairs or veterans' administration, and does not include any child support received for children who were not born or adopted during the marriage at issue."

When reviewing the above statutory provision, we find it of particular significance that the definition of "gross" income specifically *includes* spousal support received from a person *not a party* to the current child support proceedings and that the portion of R.C. 3113.215(A) that lists specific forms of income that are to be excluded from the gross income calculation does not provide for the exclusion of spousal support paid by a party to the other party. In addition, line nine of the worksheet included in R.C. 3113.215(E) and (F) provides for an adjustment *from* the income of a party who pays annual court-ordered alimony to a *former* spouse (which must be construed as a former spouse who is not a party to the proceedings, since the same worksheet that is used for the initial child support calculation in a divorce proceeding is used as well for any subsequent modification). However, there is no such provision for an adjustment for the payment of spousal support to the other party to the child support proceeding.

Upon consideration of the foregoing, this court finds that: (1) R.C. 3113.215 clearly states that the proper treatment of spousal support payments from one

party to the other in a child support proceedings is not to deduct spousal support paid from the payor's gross income calculation and not include the amount received for spousal support in the payee's gross income calculation, and (2) while the trial court correctly excluded spousal support received from appellant from appellee's gross income, it erred in excluding the amount of annual spousal support paid to appellee from appellant's gross income.

Accordingly, we find appellant's second assignment of error not well taken and appellee and cross-appellant's sole assignment of error well taken.

In his third assignment of error appellant asserts that the trial court erred in determining that appellant's spousal support after June 1, 1990 was $28,460 instead of $35,480 as indicated by the separation agreement. Essentially appellant is arguing that the trial court should have increased its deduction from his gross income determination for spousal support paid to $35,480 from $28,460 after June 1, 1990, the date of emancipation of the parties' oldest child, in calculating his child support obligation for the youngest child after that date. In light of our determination that the trial court should not have made any deductions from appellee's gross income determination for spousal support paid to appellee, we find this assignment of error to be not well taken.

In his fourth assignment of error appellant asserts that the trial court abused its discretion in increasing his child support obligation to $29,328 per year. Appellant's arguments in support of this assignment of error challenge several specific aspects of the trial court's determination as to his and appellee's gross income for purposes of calculating his child support obligation. Specifically, appellant asserts that the trial court abused its discretion by including $40,000 from his "Comdisco investment" in his gross income, by including $30,000 in pension contributions in his gross income, and by failing to consider appellee's unearned "potential income" as provided for in R.C. 3113.215(A)(5).[3]

During the hearing on appellee's motion, appellant testified at length as to the nature of his Comdisco investment. As to the reported income from this investment, appellant stated that, although his financial statements indicated income in the amount of $40,018, only $4,000 of that was actually received, the other $36,000 having been "paper income" that was applied to a recourse note executed by him previously as part of the initial investment. Appellant asserts that only the $4,000 should have been included in his income even though he was required to report the entire amount as income for tax purposes which resulted in

---

3. To the extent that this assignment of error generally challenges the trial court's order increasing appellant's child support obligation, we have already determined in our consideration of appellant's first assignment of error that appellee was entitled to an increase in child support.

a tax liability of $14,000. Appellant also asserts that the trial court's treatment of this investment is contrary to R.C. 3113.215(B)(3)(h), which provides that a court should take into account special tax considerations with which a party may be burdened.

Upon consideration of the foregoing, we find that even if most of this $40,000 was only "paper income" as described by appellant, the trial court properly included the entire amount in its determination of appellant's gross income for the purpose of calculating his child support obligation. R.C. 3113.215(A)(2). While R.C. 3113.215(B) does provide that a trial court may deviate from the amount of support calculated from the schedules and worksheet and in so deviating *may* consider the amount of tax a party actually paid, any such deviation is determined *after* the child support obligation is calculated, not in the trial court's computation of a parties' gross income.

■ Appellant's next argument under this assignment of error is that the trial court erred by failing to exclude from appellant's income the $30,000 pension contribution made on his behalf by Lake Wilmer OB/GYN in which he was a fifty-percent owner. Appellant argues that a pension contribution is not the type of cash flow or income contemplated by R.C. 3113.215(A)(2) and, therefore, the trial court should not have included this contribution as income for purposes of calculating his child support obligation.

When reviewing R.C. 3113.215(A)(2) we note that that section requires the trial court to include as gross income "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable. * * *" That section contains no specific exclusion for contributions made to retirement plans. Upon consideration of the foregoing, we find that that section required the inclusion of the $30,000 in contributions to appellant's pension plan.

Appellant also argues under this assignment of error that, pursuant to R.C. 3113.215(A)(1)(b), the trial court should have attributed potential income to appellee since she was voluntarily unemployed or underemployed. Appellant asserts (1) that the trial court did not consider that appellee was able to work, (2) that appellee did not present expert testimony that her physical disabilities prevented her from working, and (3) that the trial court should have considered the value of appellant's IRA funds in determining the availability of funds for her to pay child support.

R.C. 3113.215(A)(5) provides as follows:

" 'Potential income' means both of the following for a parent that the court determines is voluntarily unemployed or voluntarily underemployed:

"(a) The income that the court determines the parent would have earned if fully employed as determined from the parent's employment potential and

probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides;

"(b) Imputed income from any non-income producing assets of a parent, as determined from the current rate of long-term treasury bills or another appropriate rate as determined by the court, if the income is significant."

Appellant argued at the motion hearings that appellee was voluntarily unemployed or underemployed. However, the trial court made no such finding and did not attribute any potential income to her. This court has reviewed the entire record of proceedings before the trial court and, upon consideration thereof, we find that the trial court did not abuse its discretion in failing to find that appellee was either voluntarily unemployed or underemployed or by failing to permit evidence as to the value of the IRA accounts appellee received in the property settlement for the purposes of calculating the parties' child support obligation.

In accordance with the foregoing, appellant's fourth assignment of error is found not well taken.

In his fifth assignment of error, appellant asserts that the trial court erred in ordering the modification of the child support to be retroactive to August 3, 1989, the date appellee first filed her motion for modification. Appellant argues that, due to the failure of appellee to comply with the local rules, the motion was dismissed on September 19, 1989, and not reinstated until November 20, 1989, and that appellee did not even obtain proper service on the motion until April 1990. Appellant argues that the modification of child support should only relate back to the date service was properly obtained.

The trial court has the discretion to order the modification of the child support order retroactive to the date of the filing of the motion. *Murphy v. Murphy* (1984), 13 Ohio App.3d 388, 13 OBR 471, 469 N.E.2d 564.

Upon review of all of the proceedings herein, we find that the trial court did not abuse its discretion in ordering that the increase in appellant's child support obligation apply retroactively to the date the motion was first filed. Accordingly, appellant's fifth assignment of error is found not well taken.

Appellant's sixth and eighth assignments of error are interrelated and will be considered together.

In his sixth assignment of error appellant asserts that the trial court erred by failing to give him, pursuant to R.C. 3113.215(B)(3)(i), credit for in-kind contributions to the oldest daughter for her expenses to train and compete in horse shows in accordance with an agreement made by appellant.

In his eighth assignment of error appellant asserts that the trial court's failure to deviate from the guidelines calculation was against the manifest weight of the evidence and an abuse of discretion. Appellant submits that the trial court failed to determine appellant's child support obligation on a case-by-case basis as required by R.C. 3113.215(B)(2)(b), failed to consider the actual expenses and needs of the parties and the children, and made no determination that the needs of the remaining minor child required the amount determined under the guidelines or ten percent of the parties' combined gross income. Appellant states that it is not within the best interest of the minor child to order that amount of child support.

R.C. 3113.215(B)(2)(b) provides that, where the combined gross income of both parents is in excess of $120,000 annually, the court is to determine the amount of the obligor's child support obligation on a case-by-case basis, considering the needs and the standard of living of the children. That section also provides however, that:

" * * * the court shall compute a basic combined child support obligation that is no less than the same percentage of the parent's combined annual income that would have been computed under the basic child support schedule and under the applicable worksheet, through line 18, for a combined gross income of one hundred twenty thousand dollars."

That section provides further that a court *may* deviate from that amount if it determines, after considering the factors set forth in R.C. 3113.215(B)(3),[4] that such an amount is unjust, inappropriate, or not in the best interests of the children. If the court makes such a deviation, however, it must enter in the journal the amount of child support calculated, its determination that the amount

---

4. R.C. 3113.215(B)(3) provides in pertinent part:

"(3) The court, in accordance with divisions (B)(1) and (2)(c) of this section, may deviate from the amount of support that otherwise would result from the use of the schedule and the applicable worksheet, through line 18, in cases in which the application of the schedule and the applicable worksheet, through line 18, would be unjust or inappropriate and would not be in the best interest of the child. In determining whether that amount would be unjust or inappropriate and would not be in the best interest of the child, the court may consider any of the following factors and criteria:
"(a) special and unusual needs of the children;
" * * *
"(f) disparity in income between parties or households;
"(g) benefits that either parent receives from remarriage or sharing living expenses with another person;
"(h) the amount of federal, state, and local taxes actually paid by a parent or both of the parents;
"(i) significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, or clothing;
"(j) any other relevant factor included in sections 3109.05 and 3111.13 of the Revised Code."

is unjust, inappropriate or not in the children's best interests, and findings of fact supporting that determination. R.C. 3113.215(B)(2)(c)(ii).

In this case there was evidence in the record as to the standard of living of the parties and their children, their expenses, and the monetary contributions made by both parties for their eldest daughter's horse. We do not find that the trial court failed to consider this evidence; rather, the court in its decision specifically stated that it saw no reason to deviate from the calculated amount of child support. Upon consideration of the entire record of proceedings before the trial court, this court finds that the trial court did not abuse its discretion in failing to deviate from the amount of child support as calculated pursuant to R.C. 3113.-215(B)(2)(b).

Accordingly, appellant's sixth and eighth assignments of error are found not well taken.

In his ninth assignment of error appellant asserts that the trial court erred in awarding appellee attorney fees in the amount of $12,500.[5]

█ Whether to award attorney fees in a post-divorce action lies within the discretion of the trial court. *Blum v. Blum* (1967), 9 Ohio St.2d 92, 38 O.O.2d 224, 223 N.E.2d 819, at syllabus; *Evans v. Brown* (1986), 34 Ohio App.3d 56, 59, 31 OBR 607, 609, 516 N.E.2d 1289, 1291.

█ Upon consideration of the record before us we do not find that the trial court abused its discretion in awarding appellant $12,000 in attorney fees. Accordingly, appellant's ninth assignment of error is found not well taken.

Upon consideration whereof, this court finds that the trial court's decision is affirmed in part and reversed in part.

The trial court's decision is reversed as to the amount of the child support ordered and its calculations of child support arrearages, and remanded to the trial court for the limited purpose of recalculating appellant's child support obligation by including in its determination of appellant's gross income the amount of spousal support paid to appellee in each applicable year. In making these calculations, we instruct the trial court to use the worksheet required by R.C. 3113.215(E) and to make it a part of the record. See *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

GLASSER, P.J., and HANDWORK, J., concur.

---

**5.** Although appellant uses the figure of $12,500, the judgment entry of May 10, 1991, indicates that the amount awarded appellee for her attorney fees was $12,000.