PAULUS, Appellant,

v.

PAULUS, Appellee.

[Cite as *Paulus v. Paulus* (1994), 95 Ohio App.3d 612.]

Court of Appeals of Ohio,
Geauga County.

No. 93–G–1828.

Decided July 5, 1994.

*Stanley Morganstern* and *Larry I. Madorsky,* for appellant.

JOSEPH E. MAHONEY, Judge.

This is an accelerated case submitted on appellant's brief.[1]

On May 14, 1993, plaintiff-appellant, Delores A. Paulus, filed a "Motion To Modify Child Support and For Child Tax Exemption." The motion was heard before Referee Thomas J. Mullen, who filed a report on August 18, 1993 and filed a supplemental report on September 21, 1993. Appellant filed objections to the report. The two objections raised concerned the inclusion of spousal support in determining appellant's gross income and the denial of the tax exemption to appellant.

On October 26, 1993, the trial court overruled appellant's objections and denied her motion.

Appellant has filed a timely appeal and now presents four assignments of error.

Under the first assignment of error, appellant contends that the trial court erred in including spousal support she receives from appellee as income in calculating child support.

The referee found that appellant's present income was $13,863 per year and her spousal support was $11,400 per year. Pursuant to our decision in *Kundrat v. Kundrat* (Feb. 26, 1993), Lake App. No. 92–L–097, unreported, 1993 WL 76243, the referee found that the spousal support was income in determining the child support.

Appellant asserts that the rationale contained in *Kundrat* is not supported by Ohio law and should not be applied as the standard in determining gross income for computing child support. Appellant points out that our decision in *Kundrat* conflicts with our decision in *Jackson v. Jackson* (Oct. 23, 1992), Lake App. No. 91–L–112, unreported, 1992 WL 315543, which was decided four months earlier, and it also conflicts with decisions from other districts. See *Parzynski v. Parzynski* (1992), 85 Ohio App.3d 423, 620 N.E.2d 93; *Bailey v. Bailey* (Sept. 22, 1992), Franklin App. No. 92AP–446, unreported, 1992 WL 246051.

In *Jackson,* this court construed the pertinent statutory language of R.C. 3113.215(A)(2), which provides:

" 'Gross income' * * * includes * * * spousal support actually received from a person not a party to the support proceeding for which actual gross income is being determined * * *."

---

1. Appellee did not file a brief and is not participating in this appeal.

Based on this language, we concluded at 5:

"Implicit in the legislature's directive is that spousal support, ordered to be paid by a party to the child support proceeding, is not to be considered gross income in the determination of child support."

Four months later, this court addressed the same issue in *Kundrat*, wherein we stated at 5:

"In interpreting R.C. 3113.215, we will attempt to employ a common sense approach consistent with the rules of construction as followed in *Miller Properties v. Ohio Civil Rights Comm.* (1972), 34 Ohio App.2d 113, 118 [63 O.O.2d 169, 171, 296 N.E.2d 300, 303]. In *Miller* the court stated that:

" '[A] statute should be given that construction, unless such is prohibited by the letter of the statute, which will accord with common sense and reason and not result in absurdity or great inconvenience. (Citation omitted.)'

"Appellant extracted the last sentence of the first paragraph stating 'spousal support * * * determined' to mean that gross income may include only spousal support payments which are made by a third-party/former spouse who is not a party to this proceeding. However, appellant has read this section much too narrowly. While this section of the statute does not specifically name 'spousal support' as a definite source of gross income, the examples contained in the section are not all inclusive, as evidenced by the catch-all phrase, ' * * * and includes, but is not limited to * * *.'

"Thus, since this section of the statute is an omnibus clause which does not contain an exhaustive list of strict definitions, 'the logical interpretation, absent any specific exclusion, is that spousal support constitutes "earned and unearned income" under the statute.['] Accordingly, we conclude that the trial court did not err in determining that appellant's spousal support payments should be included in her gross income calculation for purposes of awarding child support."

The Sixth and Tenth Appellate Districts, which have addressed this issue, are in accord with *Jackson, supra.* In *Parzynski, supra,* the court held that:

" * * * R.C. 3113.215 clearly states that the proper treatment of spousal support payments from one party to the other in a child support proceedings is not to deduct spousal support paid from the payor's gross income calculation and not include the amount received for spousal support in the payee's gross income calculation * * *." 85 Ohio App.3d at 434–435, 620 N.E.2d at 101.

The *Parzynski* court construed R.C. 3113.215 and reasoned:

"When reviewing the above statutory provision, we find it of particular significance that the definition of 'gross' income specifically *includes* spousal support received from a person *not a party* to the current child support

proceedings and that the portion of R.C. 3113.215(A) that lists specific forms of income that are to be excluded from the gross income calculation does not provide for the exclusion of spousal support paid by a party to the other party. In addition, line nine of the worksheet included in R.C. 3113.215(E) and (F) provides for an adjustment *from* the income of a party who pays annual court-ordered alimony to a *former* spouse (which must be construed as a former spouse who is not a party to the proceedings, since the same worksheet that is used for the initial child support calculation in a divorce proceeding is used as well as [*sic* ] for any subsequent modification). However, there is no such provision for an adjustment for the payment of spousal support to the other party to the child support proceeding." (Emphasis *sic*.) *Id.* at 434, 620 N.E.2d at 101.

In *Bailey, supra,* the Tenth Appellate District found that the trial court correctly calculated child support by not deducting the amount of spousal support from plaintiff's income and not including it in defendant's income. The trial court in *Bailey* recognized that a statutory conflict exits between R.C. 3113.215(A) and 3113.215(E), which permits the payor to deduct court-ordered spousal support paid to a former spouse but does not address the deductibility if the payee is a party to the support proceeding.

The trial court in *Bailey* reasoned:

"To deduct the amount of spousal support paid from the income of Plaintiff while not including it as income to Defendant reduces the amount of child support and penalizes the child. Also, such an interpretation requires one calculation prior to the final divorce and a different calculation following the divorce, and could require immediate modification of the child support order pursuant to R.C. 3113.215(B)(4). A more equitable result would occur if the amount of spousal support is deducted from the income of the payor while being included as income to the payee, thereby reflecting the disposable income of each party. *However, such an interpretation is precluded by R.C. 3113.215(A)(2).* In view of the statutory conflict, the court finds that the referee correctly calculated the amount of child support by not deducting the amount of spousal support from Plaintiff's income, and not including it in Defendant's income." (Emphasis added.)

The Supreme Court of Ohio has recently held:

"The terms of R.C. 3113.215 are mandatory in nature and must be followed literally and technically in all material respects." *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, paragraph two of the syllabus.

Applying *Marker* and the plain language of R.C. 3113.215(A)(2), we find that our decision in *Jackson,* as well as the decisions in *Parzynski* and *Bailey,* are better reasoned and we choose to follow them instead of *Kundrat.* Therefore, we expressly overrule the holding of *Kundrat,* and we conclude that spousal support

paid by a party to the child support proceeding should not be deducted from the payor's gross income calculation and should not be included in the payee's gross income calculation in determining child support.

The first assignment of error has merit.

■ Under the second assignment of error, appellant argues that the trial court erred in failing to include bonuses received by appellee in his gross income in determining child support.

R.C. 3113.215(A)(2) specifically states that gross income includes overtime and bonuses, and R.C. 3113.215(B)(5)(d) states how income from overtime and bonuses is to be calculated.

The trial court adopted the referee's finding that appellee's income is $60,000 per year. Appellee testified that he earned an annual base salary of $60,000. He also testified that he received a bonus of $5,000 in 1991, a bonus of $10,000 in 1992, $4,908 in unused vacation pay, and $6,000 from the sale of securities. Appellee's 1991 tax return shows a gross income of $81,599 and his 1992 tax return shows a gross income of $75,800.

The referee used the $60,000 figure as appellee's gross income in computing child support and did not include an average of any bonuses or other earnings which should have been included in appellee's gross income. Thus, the child support calculation was based on an incorrect figure for gross income.[2]

Accordingly, the second assignment of error is well taken.

In the third assignment of error, appellant contends that the trial court erred in continuing a deviation in child support that the parties agreed to in their divorce.

At the time of the divorce, appellee's support obligation was calculated to be $271.24. However, the parties agreed to deviate from the child support guidelines by $71.24 per month per child, thereby reducing the obligation to $200 per month per child. Appellee was also ordered to pay $950 per month for five years to appellant as spousal support.

In determining appellant's motion to modify, the referee calculated that appellee's support obligation (based on the $60,000 figure for gross income) under the guidelines would be $292.78 per month per child for four children. The referee recognized that the parties deviated from the guidelines at the time of the divorce and found that the deviation should be continued. The referee then

---

2. We note that even with this incorrect figure, the trial court found a ten percent increase in child support existed. It logically follows that the inclusion of bonuses and other earnings will increase the child support more than ten percent.

applied the same deviation, $71.24, to reduce the support obligation to $220 per month per child. It is apparent that the referee rounded off the amount as the actual amount would have been $221.54.

The referee found that application of the guidelines would result in appellee's paying forty-two percent of his gross income for spousal support and child support. The referee further found:

"Although a 10% increase in child support is presumed to be a change of circumstances, this referee finds that the presumption is rebutted based on all of the facts and circumstances in this matter and the parties' agreed-upon deviation at the time of the divorce; to obligate defendant to pay 42% of his gross income for spousal support and child support is not in the best interest of the children; defendant's finances will not permit him to meet this obligation; there is no change of circumstances justifying a modification of child support."

The trial court found that the child support guidelines were correctly computed by the referee and adopted the referee's findings.

Appellant contends that the continuance of the deviation constituted an abuse of discretion because the trial court failed to set forth specific findings of fact to support the deviation. We agree.

In *Marker, supra,* the Supreme Court of Ohio held at paragraph three of the syllabus:

"Any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination."

There is nothing in the record to support the deviation or the continuance of the deviation, and there is no evidence to support the finding that appellee had any financial inability to pay any increase in child support.

The third assignment of error has merit.

Under the fourth assignment of error, appellant asserts that the trial court erred in finding there was no change in circumstances. We agree.

Even under its own calculation, which was based on an incomplete gross income figure of $60,000 for appellee, the trial court found that a ten percent increase in child support existed. However, the court rebutted this change based on the deviation at the time of divorce and on appellee's alleged financial inability to pay an increase. Based on our discussion under the third assignment of error, the court's rebuttal of the presumption of a change of circumstances was not supported by factual findings nor by the evidence in the record.

Accordingly, the fourth assignment of error has merit.

For the foregoing reasons, appellant's assignments of error are sustained, the judgment of the trial court is reversed, and the matter is remanded to the trial court to reconsider appellant's motion to modify child support in accordance with the procedures set forth in R.C. 3113.215 and in this opinion.

*Judgment reversed*
*and cause remanded.*

CHRISTLEY, J., concurs.

FORD, P.J., dissents.

FORD, Presiding Judge, dissenting.

I vigorously dissent from the majority's opinion. The majority cites *Parzynski, Jackson,* and *Bailey* in support of its decision to overrule our *Kundrat* case. However, this writer fails to understand how those cases lend significant support to the majority's view.

First, the majority characterizes the foregoing cases as "better reasoned" than *Kundrat.* However, I note that *Jackson* was released by this court in October 1992, four months prior to the release of *Kundrat,* and did not contain a uniquely thorough analysis and interpretation of the statutory sections at issue in *Kundrat* because that issue was not central to the disposition of *Jackson.* Thus, the *Kundrat* decision is the most recent pronouncement on this specific issue from this court.

Furthermore, although the *Jackson* court was composed of two visiting judges, the writer of the majority here concurred with the result in *Kundrat.* Thus, it would appear that he agreed with our analysis in *Kundrat.* I am fully aware that *Parzynski* was released only one week prior to oral argument in *Kundrat,* and was not brought to our attention at that time as it was here. However, the analysis contained in *Parzynski* was presented and argued in *Kundrat,* and we decided to reject such position for the reasons discussed fully in our opinion. *Kundrat* at 4–7. Accordingly, I staunchly spurn *Jackson* and *Parzynski* as "better reasoned" opinions which provide solid bases for overruling *Kundrat.*

Turning now to *Bailey,* I find that it actually lends support to our position in *Kundrat.* The quotation from *Bailey* contained in the majority opinion reads in part that:

"To deduct the amount of spousal support paid from the income of Plaintiff while not including it as income to Defendant reduces the amount of child support and penalizes the child. Also, such an interpretation requires one calculation prior to the final divorce and a different calculation following the divorce, and could require immediate modification of the child support order pursuant to R.C.

3113.215(B)(4). *A more equitable result would occur if the amount of spousal support is deducted from the income of the payor while being included as income to the payee, thereby reflecting the disposable income of each party.* However, such an interpretation is precluded by R.C. 3113.215(A)(2)." (Emphasis added.) *Id.* at 5–6.

Thus, it is clear that the *Bailey* court recognized the inequitable result which is achieved by the majority's view, and concurs with the reasoning that we espoused in *Kundrat* at 7:

"It would also be unfair to treat appellee's alimony payments as part of his gross income calculation for child support purposes when this 'income' is not actually available to him from which to pay child support because it is given to appellant instead. Thus, the 'income' from which appellee pays child support does not actually belong to him, and should not be credited to him."

It appears that the primary reason why the *Bailey* court ultimately arrived at a different conclusion than in *Kundrat* was because it interpreted R.C. 3113.215(A)(2) as precluding such result. However, as stated in *Kundrat*, for reasons of fairness, equity, and logic, we simply viewed R.C. 3113.215(A)(2) differently. Moreover, in *Kundrat*, we were persuaded by other factors such as the tax consequences the parties agreed to incur. In *Kundrat*, the payor received a deduction against his gross income for alimony paid, and the payee received an increase for alimony received.

Based on the foregoing, it is my view that *stare decisis* militates against the overruling of *Kundrat* based on cases from other appellate districts which embraced arguments that we soundly rejected in *Kundrat*.