OPINION
{¶ 1} Defendant-appellant, Michael Flege, appeals the decision of the Butler County Common Pleas Court, Domestic Relations Division, regarding child support and property division in a divorce action. We affirm in part and reverse and remand in part.
 {¶ 2} Appellee, Anita Flege, filed for divorce on February 10, 2000 after nearly nine years of marriage to appellant. Two children were born of the marriage. Appellee works outside the home. Appellant is self-employed as a salesman and operations manager.
 {¶ 3} A three-day contested divorce proceeding was held on January 19, 2001. A decision was issued on May 3, 2001, and the decree was entered on August 24, 2001. The trial court ordered child support payments and awarded appellee her share of money taken out of a marital account. Appellant appeals the decision of the trial court, and presents two assignments of error.
Assignment of Error No. 1
 {¶ 4} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN ITS DETERMINATION OF APPELLANT'S INCOME."
 {¶ 5} Appellant maintains that the trial court incorrectly determined his income. Therefore, he asserts the computation of his child support payment is incorrect. He argues that the trial court did not credit him for business expenses or take into account that he reorganized his business.
 {¶ 6} A trial court's decision regarding a child support obligation is reviewed under an abuse of discretion standard. Booth v.Booth (1989), 44 Ohio St.3d 142, 144. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 7} R.C. 3113.215(A),[1] which defines income for purposes of child support calculations, states in pertinent part:
 {¶ 8} "`Income' means either of the following:
 {¶ 9} "For a parent who is employed to full capacity, the gross income of the parent;
 {¶ 10} "`Gross income' means, * * *, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to income from salaries, wages, * * *, and all other sources of income; * * * self-generated income; and potential cash flow from any source.
 {¶ 11} "`Self-generated income' means gross receipts received by a parent from self-employment, proprietorship of a business, * * * or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. `Self-generated income' includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including, but not limited to, company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses."
 {¶ 12} "When a corporate proprietorship is involved in a child-support case, the court has a duty to carefully examine the evidence of corporate expenses and deductions as related to possible personal income." Sizemore v. Sizemore (1991), 77 Ohio App.3d 733, 738. A review of all circumstances must be conducted "to determine if the individual proprietor has taken or concealed anything of value from his corporation which should be added to his personal income." Id. at 739. "The possibility of withdrawal of personal benefits from a closely held corporation for living expenses or other personal use requires sharp scrutiny of all available records to prevent avoidance of child support." Id.
 {¶ 13} In the present case, appellant stated on the final day of trial that he had reorganized his business into a subchapter S corporation and reduced his income to $70,000 a year, while hiring an employee at $38,000 a year. He argued that hiring an employee would allow him to "grow" his business, although "the transportation market is down." In its opinion, the trial court found that appellant's testimony that "he anticipates an income of $70,000 in 2001 because he is reorganizing his business and hiring an employee" was not credible.
 {¶ 14} The trial court noted that appellant's 2000 Individual Tax Return showed a business income of $133,567. The year 2000 commission statements that the court ordered appellant to provide at the conclusion of the trial showed gross receipts of $148,490. Appellant listed $148,490 on Schedule C of his 2000 Individual Income Tax Return as his gross receipts. Appellee's tabulation of appellant's year 2000 bank deposit forms found there to be over $158,000 in deposits into appellant's bank accounts. Appellant offered his own document on the last day of trial that estimated his 2001 commissions to total approximately $164,661.
 {¶ 15} The trial court found appellant's income to be $148,490 for child support purposes. The record indicates that the trial court weighed the evidence, determined the credibility of the witnesses, and arrived at an estimate of appellant's income that was not unreasonable, arbitrary or capricious. As stated earlier, R.C. 3113.215(A)(3) includes "gross receipts received by a parent from self-employment" in a parent's income for the calculation of child support. Appellant claimed his gross receipts on Schedule C of his 2000 tax return as $148,490. The trial court found the sum of his year 2000 commission statements to indicate gross receipts of $148,490. Accordingly, the trial court did not abuse its discretion in determining appellant's gross income as $148,490 for use in computing his child support obligation.
 {¶ 16} Appellant maintains that the trial court erred by not deducting any business expenses from his income when calculating his child support. He argues that he provided past tax forms and credit card statements, which list his expenses. Further, he argues that the trial court should have ordered him at the end of trial to provide his expenses at the same time that it ordered him to provide his monthly commission statements.
 {¶ 17} There is a rebuttable presumption that the amount of child support calculated using the basic child support schedule and worksheet provided in R.C. 3113.25 is the correct amount of support due. R.C.3113.215(B)(1); Morse v. Morse (2000), Butler App. No. CA2000-05-091. Court-ordered deviation from the applicable worksheet and child support guidelines must be entered by the court in its journal entry and must include findings of fact to support the determination. Marker v. Grimm
(1992), 65 Ohio St.3d 139, 143.
 {¶ 18} Appellant argues that the trial court never requested expense documents at the end of trial, whereas the trial court did order appellant to provide proof of income statements. Appellant implies that the trial court relied solely on these documents when calculating his income. Appellant's contention has no merit.
 {¶ 19} The trial court found that appellant "[has] not complied with discovery. * * * particularly in proving [his] salary." Therefore, the trial court ordered appellant to provide his monthly statements showing his earned commissions. Appellant had already testified as to his purported business expenses. He offered into evidence credit card statements that listed purported business expenses. He also offered his 1999 and 2000 Income Tax Returns into evidence, which listed purported business expenses. Accordingly, it was not an abuse of discretion for the trial court not to order appellant to provide further documents concerning his business expenses.
 {¶ 20} Appellant maintains that he provided past tax forms that included business expenses of $14,923 for the year 2000 and $10,733 for the year 1999, and that the trial court erroneously did not consider either amount when determining his business expense deduction on the Child Support computation worksheet.
 {¶ 21} A trial court is not required to "blindly accept all of the expenses appellant deducted in previous [tax] returns as ordinary and necessary expenses incurred in generating gross receipts." Cutter v.Cutter (1994), Butler App. No. CA93-05-091. This is particularly true where tax returns are not signed or schedules are missing. O'Herron v.Thomson, Montgomery App. No. 19111, 2002-Ohio-1796. Although a tax return may be helpful when computing a person's gross income, it is not the only indication of a person's income or expenses. Houts v. Houts
(1995), 99 Ohio App.3d 701, 706.
 {¶ 22} We note the 2000 Income Tax Return appellant offered as evidence was not signed nor completed in full. "In either a criminal or civil case the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Therefore, the trial court did not abuse its discretion by not including an estimated amount of expenses based upon appellant's tax returns.
 {¶ 23} Appellant maintains that he provided credit card statements containing his business expenses. The trial court noted that appellant offered no other evidence on the issue of his business expenses other than the tax returns. However, appellant did offer and the trial court admitted his year 2000 Driver's Edge Visa credit card statements, exhibit 7-G, as evidence of his purported business expenses. We find the trial court abused its discretion in not at least considering a deduction for business expenses relating to exhibit 7-G on the child support worksheet.
 {¶ 24} We note that the deduction on line 11 of the Child Support Computation worksheet which states, "[f]or self-employed individuals, deduct 5.6% of adjusted gross income or the actual marginal difference between the actual rate paid by the self-employed individual and the F.I.C.A. rate," was not taken into consideration. Appellant is self-employed and this line applies to self-employed individuals. Therefore, we find the trial court erred in not considering this line when computing child support.
 {¶ 25} We reverse and remand with instructions for the court to consider appellant's exhibit 7-G, Driver's Edge Visa Statement, in determining appellant's business expense deduction for his child support obligation. We also instruct the court to consider appellant's deduction as it pertains to line 11 on the Child Support Computation worksheet. Accordingly, the first assignment of error is sustained to the extent indicated herein.
Assignment of Error No. 2
 {¶ 26} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT ORDERED HIM TO PAY APPELLEE $4,000.00 AS A RESULT OF UNACCOUNTED-FOR FUNDS."
 {¶ 27} Appellant contends that he removed $21,049 from a money market account in order to pay taxes. He stated that $13,049 was used towards his 1999 state and federal taxes, and the remaining $8,000 was used to pay estimated taxes for the year 2000.
 {¶ 28} A reviewing court may modify a property division only if it finds that the trial court abused its discretion in dividing the property. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore, 5 Ohio St.3d at 218-219.
 {¶ 29} In the case sub judice, appellant provided proper documentation to prove that he did in fact pay $13,049 for his 1999 state and federal taxes. Appellant contends that he used the remaining $8,000 to pay his 2000 estimated taxes. Because both parties filed separate tax returns for the year 2000, we find that the trial court did not abuse its discretion in awarding appellee $4,000 for her share of the $8,000. Appellant's second assignment of error is overruled.
 {¶ 30} Judgment affirmed in part, reversed in part, and remanded to the trial court for further proceedings according to law and consistent with this opinion.
WALSH, P.J., and VALEN, J., concur.
[1] R.C. 3113.215 was repealed effective March 22, 2001. See Am.Sub.S.B. No. 180. However, we must review the trial court's application of the law that existed at the time of the trial court's proceedings. The provisions of R.C. 3113.215 applicable to the case at bar have been replaced by R.C. 3119.01 and 3119.05.